Vermillion County Mr. Cummings is up. Stuart is case number 2. Mr. Cummings is up. Mr. Cummings, did you have any opportunity for discovery before the court entered judgment? No, Your Honor, there was no discovery taking place. There was one five-minute status hearing, and the defendant filed its answer in affirmative defense. We received the request to respond to the issue raised by the affirmative defense, which was simply whether we had fled a discriminatory act within the 300 days. We filed that response and pointed out that we had specifically identified a movie, and stepping back a second, this case is about a union referral of persons to movie production companies for work as drivers. We identified a movie, the Superman movie, that took place in July 2011, which is like 90 days before Ms. Stuart filed her EEOC charge. So we completed that task, and within a matter of days, we received on the computer a decision dismissing her complaint and terminating the lawsuit, ending the matter. Now, you're asserting, I take it, that handing out a list that didn't include her would have restarted the clock each time the list was distributed. Yes, Your Honor. We identified 24 productions by name, and our theory is that each production was a separate, there's actually a separate collective bargaining agreement for each one of these productions, so that each time there is a production, it's a separate claim. There's a separate referral list that's sent over by local 727, and in each of those 24 occasions, we allege that Ms. Stuart was not on that list and was thereby deprived of any possibility of being employed by these companies, because in the collective bargaining agreements, the companies agree to hire exclusively from the list that is provided to them by the union. Who makes the selection off of that list? The production companies' transportation coordinators select the individuals who they hire as drivers off the list. Okay. I mean, down the road, I understand that Title VII makes failure to refer an independent violation. Obviously, that could be enjoined, but in terms of assuring damages, how does that work? Well, our theory would be is that there is a, by refusing to include Ms. Stuart on the list, they have, the union has deprived her of any chance, so it's kind of a loss of chance theory of damages. And as discovery proceeds and we prove up our case, we will show that these transportation coordinators, even though they are on the production company's payroll, they are affiliated with local 727, have been longtime union members, still pay a participation fee. It's not dues. It's some sort of participation fee. They still are able to perform unionized work, not with the movies, but with the trade show part of the division. So we will show that these individuals, these same men, transportation coordinators, who have been making these decisions about drivers for many years, still have a connection to the union. When you say a connection to the union, is this just, you know, personal acquaintanceship? No, Your Honor, these individuals, we allege, are actually still on the union's trade show referral list and are still able to perform work at McCormick Place and wherever else the trade show business is. There's two components to this division. One side is the movie side and the television productions. And when the transportation coordinators are acting in that role, they do not serve as drivers. But there is a trade show section of this division, and they remain available to perform that work if they have time and a desire to do so. And the union prepares a list in seniority order which lists these transportation coordinators. Even though they're not members? Even though they're not technically dues-paying members, they're still on the list. And I assume down the road you'd be able to, for example, show the earnings of the different people, the men who were on the referral list. Oh, I think absolutely, because the union has certain benefit obligations and they keep track of every hour of work. We'll be able to show how much the men earned. And that a referral is, in fact, highly likely to lead to work. Yes, and we allege and we will show that during this time period, there were tens of thousands of hours of work provided to these drivers. All of them men. Not one hour of work provided to Ms. Stewart or any other woman. And our allegation, and we will prove, they've never had a woman who served as a driver for this sort of work. And so this is a very serious case, and we, should we be remanded, intend to prove it up. But the way it came to an end in the district court here, there's just a couple of errors that I would like to touch on. The first is the very premise of the court's ruling, which is that a plaintiff must prove in her complaint or allege facts in her complaint showing the satisfaction of the statute of limitations. And that's contrary to this court's consistent precedent, which is that a plaintiff need not negate an affirmative defense in her complaint. And there was actually one of the decisions we cited, the U.S. Gibson Company case, where the precise thing, where the failure to put an injurious act within the limitations period was relied upon to dismiss a complaint, and this court said, no, that's not appropriate. Now, the district court's decision had no authority in it which would have supported this sort of action. And the locals' council, in its brief before this court, we had cited six or seven cases laying out these principles, and there's not a mention of this court's precedent in the union's council's brief on this appeal. And we interpret that head-in-the-sand approach as being an acknowledgment that there really is no way to distinguish this law. And that error right there, our position, requires that this decision be vacated and returned. And then just briefly, I mean, the getting to the substance of the court's decision, which is that there was no act within 300 days, as I mentioned, we did identify the Superman movie, which was 90 days before she filed her charge, and Ms. Stewart's EEOC charge, which the court requested from me, and I provided outside of the formal record, identified six projects that took place within this 300-day window of time. Now, the court considered the EEOC charge and actually cited it in its ruling dismissing the case, but it did not take note of those facts alleged, which would have refuted the basis for the court's ruling. Do we have the EEOC charge in our record? Yes, it is. It's in the supplemental record, and the particular page is in our reply. There's two sets of numbers. We use the district court's number, but it's supplemental record page 10, where we identify these projects that were within the 300-day period. So we, for those two reasons, and there's others we've cited, we believe that this decision should be vacated and returned back to a different district court judge. I think a fresh look at this case would be the best thing for Ms. Stewart and just the system as a whole. I'm puzzled by the reference to Superman. Is this a movie made in Chicago? Yes, Your Honor. It's about you. Oh, that's Superman. Maybe it should have been. It's also known as Autumn Frost, but they made the wise decision to change the title of that. Yes, Your Honor, you probably see these productions around the town, Transformers, all of these TV shows. Most of them have these drivers that are provided through the collective bargaining agreements, and they're all men. It's good work. It is very well-paying work. The other point I'd like to make, Ms. Stewart is a school bus driver making one-half of the wage that the men make driving people around in courtesy vans. They're not stunt drivers. They're doing the support kind of driving that I would submit as easier than driving a school bus full of kids. And so with that, I would conclude, unless there's any further questions, reserve my time for rebuttal. Thank you, Mr. Cummings. Thank you. Mr. Anderson? May it please the Court, Brandon Anderson on behalf of the Appalese Teamsters Local 727. Mr. Anderson, this is going to be difficult. I think you might be getting a little bit of a drift because can you cite any case where we allowed a court to dismiss a case sua sponte with prejudice, without notice to the plaintiff, after ordering a reply to an answer based on a contested affirmative defense? Because I, for one, don't think there is one. Your Honor, the answer is no. I've looked for it. It does not exist. That's good to know. So, you know, here we are.  I think what might make this case different, Your Honor, is to a large extent it is an issue of first impression because we haven't had that case. And what makes this particular situation different than some of the other cases that were referenced in the appellant's brief is that this wasn't a 12b-6 dismissal and it wasn't based just on the complaint. It was following the court, providing the plaintiff an opportunity to explain. So under the rules of civil procedure, what was this? Yeah. I think it's best characterized as a 12c dismissal, Your Honor. No. The court requested it and then apparently used a document outside the pleadings. So was this akin to summary judgment? Because without a motion it's just difficult to tell what was going on here. I just could not figure out under what procedure or authority the court entered judgment against the plaintiff. So you're thinking it was akin to a motion for judgment on the pleadings under 12c? Is that what you're thinking? That's correct. Well, what was it that she said in her response to Judge Shader's direction to file something, her invitation? What did she say that demolished her case? I don't understand. Well, it's a combination of what she didn't say and I think you have to look at that in looking at the complaint as a whole. Well, what's missing? Okay. So with her two filings, what is missing that shows her case has no merit? Well, I think what Judge Shader was thinking in this case is that what's missing is some sort of activity that would give rise to a claim during that 300-day period. Well, a refusal to refer her. The prima facie elements of a refusal to refer case include the plaintiff actually seeking referrals, being qualified for referrals. Are you familiar with the Supreme Court's decision about not having to issue a case under Title VII in Sierkiewicz? I am, Your Honor. And I'm only looking to the prima facie elements to just kind of bring into the context. So that can't be what's missing though, right? I agree that that can't be what's missing. That's what's missing. But what I'm doing is I'm kind of looking at the elements as a whole, and I think that that's part of what Judge Shader considered when he looked at what complaint allegations there actually were. It seems to me that every time they handed out a referral list without her name on it, that was a discreet act of discrimination. Now, you might contest that factually, but how has she failed to state a claim as a matter of law? I mean, she has done it. And, of course, if the case arises, we will contest that fact. Do you claim that you did refer her? Your Honor, this might be a good reason to, and it's a little bit difficult to do in the context because what we do. Presumably you answered that question in your answer. I just don't know it off the top of my head. We have. What did you say? She was referred. Now, it's not really. Why are you bobbing and weaving on this? Because it's not a strict referral system. Basically, the way this works, Your Honor, is that there's a book. The union maintains a book filled with what are called application for referrals movie. There is no referral list. It's basically a book of resumes. You don't have to be a member. All men. No, Your Honor. Why didn't she ever get a job? I mean, one of these driving jobs. Your Honor, the people who know the answer to that question are going to be the producers and the transportation coordinators. Okay. It's not the union. That's fine. I don't understand. I don't know what's going on. Your Honor, I think what you'll see is that the number of. Did she fail to allege something that is critical to her case? I think what she failed to allege was something occurring during that 300-day period where she was actively trying to obtain a referral. Well, what occurred was that she didn't get the referral. Now, is it your belief, Mr. Anderson, that the plaintiff could not reasonably rely on what she says Mr. Magna told her when she kept calling and he told her, in essence, stop calling, we'll call you? Your Honor, I don't think that that's. She can reasonably rely on that. She can, right. So then that is inconsistent with what you just told us was missing from her complaint. You just told us what was missing was an allegation that she was seeking the work, right? Your Honor, that allegation in the complaint is undated. So we don't even know when that allegation occurred. So what? You can develop that in your affirmative defense, right? Right. But I think the absence of any allegation like that is what the court relied upon. Mr. Anderson, I've got to tell you. You know we're working under a fee-shifting statute here, correct? That's correct. And I frankly wonder why you all did not confess error on this appeal. Yes. This is so clear-cut. We've not seen anything like this. You know, you made this argument that courts haven't recognized failure to refer as a discreet act of discrimination. But the statute itself lists failure to refer as a basis for liability for labor organizations. I mean, something very odd happened here and it's inexplicable by such a veteran judge. And I have to tell you the idea that a law clerk can call, I don't know, an ex parte, one party, and get something that isn't in the record, that's very hard for us to understand. I understand, Your Honor. As I think we did make clear in our brief, there was a conversation. You know, both sides were aware that Judge Shader had requested that. We certainly didn't object to that being produced. Because the plaintiff's told you, right? That's correct. That's absolutely correct, Judge. Well, of course you wouldn't object. Why would you object? Well, you know, we wouldn't object now knowing what the outcome was at the time. I think what Judge Shader was looking to do was really try to determine whether there was any substance here and look beyond what was just alleged  which could have been included in the complaint. What is the difference between an act and a practice? From a discrimination perspective, Your Honor, I don't think there is a real difference between the two. Well, what's the Morgan case about? I tried to read it. I didn't understand it. The Morgan case and frankly all of the cases that kind of go to this discreet discriminatory act issue are typically cases where there's that are, well, it's in two different scenarios. One is where there's a hostile work environment claim. And basically what Morgan has said is when we have this hostile work environment claim, it's not always necessarily clear when the cause of action arises or when the damages occur. So we can look at this broader period of time and you can include things  you have to have something that occurs within that statutory period. And that type of case has been distinguished from what the court in Morgan said were the easy to identify discreet discrimination cases where the discriminatory act was a termination or failure to hire. Why is that a problem here? Why isn't the refusal to refer? It's in the statute. It's forbidden. It can't be done on discriminatory grounds. So what's the problem? Well, the problem is, Your Honor, that the way that the complaint was set up is that it, and this I think coincides with what Judge Shader said, which he didn't say that this was or that the plaintiff was alleging a continuing violation hostile work environment claim. What he said is it essentially was like one. And the key is that all that we have here is the application for referral being filled out and submitted to the union in March of 2010 and then nothing else coming after that. So if the case is based on this idea that the union has this ongoing continual practice of refusing to refer women, that it really puts it more into that hostile. Okay. So what's wrong with that? I mean, why isn't that enough? You have a policy, you know, let women drive these trucks. That obviously is unlawful. I agree. So what's the problem? The problem is, is there wasn't anything specifically identified during that 300-day period. What would be specifically identified during that period? Superman was. Well, Your Honor, I think it's a little bit strong to say that there's an allegation in the complaint where it explicitly says that there were men that were referred for that job and that the steward wasn't. Look, if the only problem is that there's something missing in the complaint, why wouldn't he give leave to refile? Look, your complaint, I want more specificity or something. You don't dismiss with prejudice just because you've got some problems in a complaint. Look, the court held her to a level of specificity in pleading. That is simply not required by law. That's the beginning and the end. Now, where does the statute of limitations come into this? I mean, we have been clear. If you say in your complaint something happened in 1850, well, of course. But if you don't mention the dates, if you don't make clear that you're charging a violation that occurred outside the statute of limitations, you don't have to say it. Oh, by the way, I'm not barred by the statute of limitations. I think the court's conclusion that was when looking at the complaint, when looking at the response to the affirmative defense and looking at the EEOC charge, that there couldn't be an allegation that contained this, what Judge Shader termed discrete act during that 300-day time period. That contained what? That had a discrete act of discrimination during that particular 300-day time period. There were many, it would seem. Oh, dear. And what would be a discrete act? Again, if there was an allegation that the plaintiff sought referral or sought some sort of employment. Well, we know she sought referral on a continuing basis, so what's the problem? Well, I think that that was one of the – that's why I would disagree with you and I think Judge Shader would disagree. And his determination was that there wasn't any ongoing aspect to it. He recognized that she was calling Magna, Magna told her to stop, and he said she shouldn't have reasonably relied, couldn't have reasonably relied on that because she thought they were discriminating against her, right? Well, that went to his – And you just told us a minute ago that she could reasonably rely on his telling her, don't call us, we'll call you, right? Well, rely on that for what it is. For not calling him every week to generate a separate, discrete event of discrimination. I mean, that's – okay. Anything else you want to tell us? No. No, thanks, Your Honor. Okay. Thank you, Mr. Adams. Thank you. Thank you. Mr. Cummings? Anything further? Your Honors, unless you have any further questions for me, I will release the remainder of my time. Okay. Well, thank you very much, Mr. Cummings. Thank you. Mr. Anderson. And we'll move –